IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF IOWA

| | |
|---|---|
| UNITED STATES OF AMERICA, <br><br> Plaintiff, <br><br> v. <br><br> LI SHAOMING, MO HAILONG, also known as Robert Mo, WANG LEI, WANG HONGWEI, YE JIAN, LIN YONG, and MO YUN <br><br> Defendants. | Case No. 4:13-CR-147 <br><br> DECLARATION OF MARK E. WEINHARDT IN SUPPORT OF DEFENDANT MO HAILONG'S MOTION TO COMPEL DISCOVERY |

1. I am an attorney licensed to practice law in the State of Iowa and am a principal at Weinhardt & Logan, P.C. I am counsel for Mo Hailong in this action. Unless stated on information and belief, I make this declaration based on my own personal knowledge and knowledge communicated to me from other attorneys working on Mr. Mo's defense. If called as a witness, I could and would competently testify to the matters set forth herein.

Mr. Mo's Discovery Demands and the Government's Productions

2. I know personally or have been informed of the following facts:

a. On March 24, 2014, counsel for Mr. Mo corresponded with the government. As of this date, the government had not produced any discovery. Counsel urged the government to produce discovery and lodged his concern regarding the slow pace of the case given that months had passed since Mr. Mo's arrest. Contemporaneous to this request, the government began producing discovery.

b.　　Between April and August 2014, counsel for Mr. Mo corresponded with the government on numerous occasions, and at least monthly, seeking supplements to the government's productions. Counsel for Mr. Mo listed in detail the items that were missing (in the form of items referenced in discovery but not produced) or defective (such as videos that did not play).

c.　　During this general time period, the government responded only by producing certain items in discovery. It did not provide all the information requested by counsel.

d.　　Throughout the history of this case, counsel has endeavored to work cooperatively with the government in connection with its discovery disputes. At a hearing on April 30, 2014, counsel deferred to the government when it requested the court-ordered Rule 16 discovery cut-off date of July 16, 2014. Mr. Mo sought certainty with respect to discovery, so counsel did not resist the two and a half month delay to allow the government to complete its production.

e.　　The government did not meet the discovery cut-off. A voluminous amount of discovery was still outstanding more than a month after that date. The government has never represented that even in its own estimation it met the deadline.

f.　　On August 28, 2014, counsel for Mr. Mo sent the government a 22-page letter, memorializing its previous requests and setting forth in detail items missing from the government's productions to that point. Among other things, Mr. Mo requested, and the government responded, as follows:[1]

i. Complete disclosure of all materials and information contemplated by the rules and authorities governing federal criminal law discovery,

---

[1] The government's responses, if made or applicable, are shown in bold.

including but not limited to Federal Rule of Criminal Procedure 16, *Brady v. Maryland* and *Giglio v. United States, United States v. Bagley*, 473 U.S. 667 (1985), *Kyles v. Whitley*, 514 U.S. 419 (1995), and their progeny. Our request for discovery and inspection includes materials in the possession, custody, or control of the U.S. Department of Justice (including the Offices of the United States Attorney), the Federal Bureau of Investigation, the United States National Security Agency ("NSA"), the United States Central Intelligence Agency ("CIA"), the Department of Homeland Security, Customs and Border Protection, the United States Department of Agriculture ("USDA"), and any other federal, state, or local department, agency or office that participated in this investigation in any way.

    ii. In order to enable the effective review of the more than five terabytes of data produced, (1) a table of contents setting forth information relating to the produced material pursuant to the Department of Justice's 2012 electronically-stored information ("ESI") protocol, and (2) a chart or summary identifying the key or "hot documents" relevant to the issues in this case, consistent with the approach often employed in cases with large amounts of ESI, under *United States v. Skilling* (No. H-04-025, S.D. Tex.) and *United States v. Liew* (No. 11-cr-573, N.D. Cal.) (theft of trade secrets prosecution). **The government agreed to provide "hot docs" in advance of trial, and hoped to do so by October 1, 2014.**

    iii. All written or recorded statements, or copies thereof, by defendant. Fed. R. Crim. P. 16(a)(1)(A-C). **The government agreed that this information is subject to production, and stated that it will be produced.**

    iv. All transcripts and available translations of defendant's statements, including audio recordings, and all law enforcement notes regarding the

statements. **The government stated it had hoped to "meet in the middle," but stated that there were limitations to its ability to produce them all.**

    v. All written or recorded statements by alleged co-conspirators, including audio recordings, transcripts and translations, and all notes regarding these statements. **The government stated that it would produce this information.**

    vi. Inspection of all physical evidence including seed-related materials, original documents, and digital devices. **The government stated that it believed we would be able to inspect such items, but needed to agree on a date and on safeguarding protocols.** No date or protocols have been provided.

    vii. Any results or reports regarding scientific tests or experiments, or copies thereof, and all documents referring or relating to such results or reports, that the government intends to use in its case-in-chief or that are material to the preparation of the defense. Fed. R. Crim. P. 16(a)(1)(F). **The government said that this case would involve actual trade secret evidence, and that it expected to disclose this information "soon." The government said it had further scientific testing discovery, but would disclose it after obtaining a protective order. The government hoped to do this by early October 2014.** Mr. Mo has not received any such information or a proposed protective order.

    viii. All materials related to the scientific analysis of any evidence, or the inability to conduct such analysis, including correspondence or data shared between the government and BioDiagnostics, Inc., Pioneer, Monsanto, or AgReliant.

    ix. Disclosure of all evidence in the possession, custody, or control of, or otherwise known to the government that is exculpatory in nature or

favorable to the defense or that tends to negate or mitigate the guilt of defendant as to the charged offense, or that would tend to reduce the punishment imposed if a conviction is obtained, including all such information that, while not in the immediate possession, custody, or control of the government, is uniquely accessible to it. *Brady v. Maryland*, 373 U.S. 83 (1963), and related case law, including *United States v. Agurs*, 427 U.S. 97 (1976), *Giglio v. United States*, 405 U.S. 150 (1972), *United States v. Bagley*, 473 U.S. 667 (1985), and *Kyles v. Whitley*, 514 U.S. 419 (1995). Mr. Mo also specifically requested any materials or documents that tend to (i) show the motivation of any government witness or the witness's employer to cooperate with the government; (ii) call into question the competency or credibility of the witness; or (iii) show the witness's bias in favor of the government or bias or hostility against any defense.

x. As a predicate to motions pursuant to Federal Rule of Criminal Procedure 12, Mr. Mo requested a specific description of all evidence obtained by search and seizure and the legal authority permitting the search or seizure (e.g., federal search warrant under the Foreign Intelligence Surveillance Act ("FISA"), search warrant issued by Federal Magistrate Judge, or warrantless search or seizure). If any search or seizure was executed without a warrant, Mr. Mo requested disclosure of the nature of the information upon which the search was based, and the date the information was received by the government.

xi. Applications with supporting affidavits for court orders, and court orders and all related filings, for any search or seizure conducted in this case.

xii. Confidential Human Source information, including confidential informant information. **The government stated that there was "little to nothing" within this category.**

xiii. Monee Farm Pole Camera Video. The government has not produced a viewable copy.

xiv. Mo Hailong Residence Pole Camera Video. The pole camera video recordings of Mo Hailong's residence do not play.

xv. Photographic evidence. Mr. Mo received certain photographs and videos in response to his request, but seeks confirmation that all photographs and videos have been produced, and that no such further material exists.

xvi. Search warrant returns. In addition to all the search warrants listed above, Mr. Mo sought copies of the search warrant returns that are currently illegible. **The government has agreed to produce this information.**

xvii. Classified Materials. Mr. Mo has sought production of all remaining classified materials as soon as possible, either in declassified form or pursuant to CIPA protocol. **The government stated that it will not disclose all of the currently classified information it possesses in connection with this case.**

xviii. Attachments to the declassified FBI reports, 302s, and other reports: Many of the law enforcement reports produced in discovery reference attachments that have not been produced. The government has been provided a list of missing attachments (*See* attached Exhibit A), and Mr. Mo seeks an order compelling the government to produce each one.

xix. English-language translations of Chinese-language materials: The government has translated documents and transcripts into English from Mandarin Chinese. (See, e.g., 7/17/14 Hearing Tr. 12 (documents seized during search warrant were translated into English; Superseding Indictment (includes English-language translations of apparent Chinese-language recordings.). Mr. Mo seeks all English

language translations of all recordings, documents, or other materials that have been transcribed or otherwise translated for the government's review, even in draft form.

xx. Explanation for gaps in recorded conversations: Mr. Mo seeks an explanation for the large temporal gaps between the recorded conversations from the Ford Escape. **The government has agreed to produce this information.**

xxi. Discovery from investigating companies. Mr. Mo sought all discoverable information learned pursuant to communications the government has had with current or former personnel from Pioneer, Monsanto, and AgReliant.

g. On September 10, 2014, counsel for Mr. Mo again wrote to the government. In addition to seeking a response to the requests identified on August 28, 2014, counsel specified certain requests with further detail. Mr. Mo sought, generally speaking, (1) documents and information currently in the hands of private companies that participated in the investigation of this case, (2) documents and information the government has already obtained from such companies, and (3) other discoverable information regarding seed testing. The specific requests included:

i. In discovery, the government represented that it discussed with the seed companies the logistics of conducting laboratory testing of seed products in the FBI's custody, as well as compliance with USDA, FDA, and EPA regulatory mandates implicated by laboratory testing. Mr. Mo requested:

1. All information in the possession, custody or control of the government regarding the "logistics of conducting laboratory testing of seed products in the FBI's custody;"
2. All testing methods employed for each and every test conducted, planned, or discussed;

    3. The test result data from each and every test conducted, regardless of result;

    4. All opinions, findings and conclusions provided to the government by Pioneer, Monsanto, and AgReliant for each and every test conducted, planned, or discussed;

    5. All information in the possession, custody or control of the government regarding "compliance with USDA, FDA, and EPA regulatory mandates implicated by laboratory testing;" and

    6. All communications in any form, including email and voicemail, as well as notes of in person meetings or other communications, between law enforcement or any attorney for the government and any employee, agent or attorney of DuPont Pioneer, Monsanto, and LG AgReliant.

  ii. The government communicated with BioDiagnostics personnel about their ability and willingness to conduct "additional" laboratory testing of seed products in the custody of the FBI. Mr. Mo requested:

    1. All writings in the possession, custody or control of the government regarding the "ability and willingness" of BioDiagnostics to conduct "additional laboratory testing of seed products in the custody of the FBI;"

2. All testing methods employed for each and every test conducted, planned, or discussed;

3. The test result data from each and every test conducted, planned, or discussed, regardless of results;

4. All opinions, findings and conclusions provided to the government by BioDiagnostics for each and every test conducted, planned, or discussed;

5. All writings in the possession, custody or control of the government regarding "the protocols and capabilities of BioDiagnostics;" and

6. All communications in any form, including email and voicemail, between law enforcement or any attorney for the government with any employee, agent or attorney of BioDiagnostics, Inc.

   iii. Mr. Mo has sought all discoverable information in support of the government's assertion as to "Scientific Laboratory Analysis," namely, that an "individual or entity with robust enough scientific laboratory capabilities could conduct genetic analysis of a particular seed in order for their own scientific personnel to replicate the same seed." (Superseding Indictment at p. 9, ¶ 22(e).) Mr. Mo requested:

1. All information on which the government bases this assertion;

2. All information that pertains or relates in any way to the issue of whether any of the subject seeds can be replicated and/or reverse-engineered in a

    laboratory setting so as to effectively steal the alleged trade secret;

3. All information that pertains or relates in any way to the issue of whether any of the subject seeds has ever been replicated and/or reverse-engineered, either within the United States or elsewhere;

4. All information that pertains or relates in any way to the issue of whether any of the defendants charged in the superseding indictment, or any unindicted co-conspirator, had the capability to replicate and/or reverse-engineer the subject seeds;

5. All information that pertains or relates in any way to the issue of whether any of the defendants charged in the superseding indictment, or any unindicted co-conspirator, had the intention to replicate and/or reverse-engineer the subject seeds;

6. All information that pertains or relates in any way to the issue of whether Beijing Dabeinong Technology Group Company (DBN) and/or Beijing Kings Nower Seed S & T, Co. (BKN) had the capability to replicate and/or reverse-engineer the subject seeds; and

7. All information that pertains or relates in any way to the issue of whether DBN and/or BKN had the

intention to replicate and/or reverse-engineer the subject seeds.

h.  On October 29, 2014, counsel for Mr. Mo again wrote to the government. In addition to seeking a response to the requests identified on August 28, 2014 and September 10, 2014, counsel clarified that its prior requests included that the government identify the investigative techniques employed, and legal authority relied upon for all of its searches and seizures.

3. This case involves voluminous discovery. In 11 separate productions from March to October, the government produced approximately six terabytes of data taken from approximately 29 digital devices, including computers, hard drives and other media storage devices; over 100 hours of audio recordings, containing conversations in Mandarin Chinese; surveillance recordings from three pole cameras, two of which appear to have recorded data for approximately a year and a half each; and a decade worth of emails numbering in the thousands. The documents and audio recordings in Mandarin Chinese and have been produced without English language translations.

4. Attached hereto as Exhibit A is a true and correct copy of a list of law enforcement report attachments and subpoena returns that has not been produced. Counsel for Mr. Mo has made the government aware of every missing or deficient item in its discovery productions. Most recently, counsel sent a copy of Exhibit A to the government on December 10, 2014.

<u>Efforts to Resolve Discovery Disputes</u>

5. Counsel for Mr. Mo has corresponded and met and conferred with the government many times, over the course of months, in an effort to resolve the discovery disputes described in the Motion to Compel and/or to obtain the government's position as to if and when it intends to honor any of Mr. Mo's ongoing and outstanding requests.

These meet-and-confer efforts included correspondence by letter and email, telephone calls, and in-person conferences. Specifically:

  a. Counsel has sent numerous emails from April to September 2014 requesting certain items that are the subject of this motion.

  b. On September 25 and October 22, 2014, out-of-state counsel and I met with government counsel in person in an attempt to resolve the outstanding discovery disputes. Counsel informed the government that it still sought every outstanding item listed in the August 28, 2014 omnibus discovery letter.

  c. Following our initial demand letter on August 28, 2014, counsel sent three additional formal letters seeking additional items and categories of discovery and asking for a response to the outstanding requests set forth in the August 28, 2014 letter. Counsel sent these letters on September 10, 2014, October 29, 2014, and December 9, 2014.

  d. In addition, I and/or my partner, Holly Logan, have met informally with the government or spoken on the phone on the subject of outstanding discovery on multiple occasions from September 2014 to December 2014.

6. The government has only responded to Mr. Mo's demands by producing certain items in discovery, or by stating, on numerous occasions from September to December 2014, that it would deliver a formal response regarding Mr. Mo's requests. As of the date of this filing, counsel has not received any such response.

7. The government represented that it has produced some discovery that has been declassified. The government has not stated, however, as to whether any further material information exists that has not been declassified or that will be otherwise withheld by the government.

### Good Faith Effort to Confer Regarding Motion to Compel

8. I represent that counsel has conferred in good faith with the government and has attempted to obtain the government's position on the matters set forth in the motion. In addition to all of the above, the following facts bear on counsel's attempts specifically with this motion:

   a. On December 4, 2014, I informed the government of our intent to move to compel discovery. I informed the government that Mr. Mo would file his motion before the date of the next status conference, namely, prior to December 16, 2014.

   b. On December 9, 2014, I sent a detailed letter to the government summarizing Mr. Mo's discovery demands from prior letters, telephone calls, and meetings. I informed the government that I hoped to narrow the issues before the Court. I included one additional discovery demand, namely, a notebook purportedly seized from Mr. Mo's home.

   c. On December 10, 2014, my partner Holly Logan sent the government a detailed spreadsheet of the items missing or defective from previous productions. The vast majority, if not all, of these items had been communicated to the government previously.

   d. As of the date of this filing, counsel has received no written response from the government to these various communications.

### Prejudice to Mr. Mo

9. As of the date of this filing, the government has not given any date it would agree upon as a discovery deadline.

10. Counsel for Mr. Mo has been diligently reviewing the nearly six terabytes of discovery in this case while preparing his defense. We expect to be ready for trial on

the date to be set by the court, but there are certain categories of discovery we require to complete our preparation and to assess and engage in pre-trial motion practice.

11.     Preparing a case for trial without any finality regarding discovery will prejudice Mr. Mo's defense of the government's charges. Any further piecemeal productions – especially the recent production of defendant's own statements – will result in inefficient and costly trial preparation.

     a.     For example, in October 2014, the government disclosed for the first time (by way of production) that it intercepted a telephone associated with Mr. Mo. At that time, it produced, ten months after his arrest, audio interceptions gathered from May 2012 through December 2013. It has produced no transcription or translations of these calls to date. The content and context of the calls indicates that there are calls within the operative time frame that the government has not produced.

     b.     Much material in this case is in a foreign language. Given that the government has not produced a single translated document or audio recording, counsel has had to engage translators and transcribers to analyze discovery. Translation and transcription is a time-consuming and expensive process.

     c.     Each time counsel is forced to re-engage reviewers, translators, and transcribers, and provide them with the changed facts of the case, Mr. Mo will incur additional expense. Moreover, if counsel must review and analyze new tranches of discovery, counsel would be forced to reformulate and augment the search terms necessary to review effectively the digital data that is discovery. This evolving process of reformulating search terms would necessarily require counsel to re-run searches – and re-engage and re-train reviewers – to ensure the completeness of our review.

     d.     Each time the landscape changes with respect to discovery, counsel must redouble efforts with respect to its fact investigation and draft motions.

12.     Mr. Mo has received no reply from the government as to whether any further statements exist that the government ascribes to Mr. Mo or any other alleged conspirator.

13.     As counsel for Mr. Mo has represented to the Court on numerous occasions, counsel requires finality with respect to discovery prior to trial.

Discovery Pertaining to Investigating Companies

14.     I or attorneys working with me in Mr. Mo's defense have read all of the law enforcement reports produced in discovery. Numerous reports detailing the government's contacts with Pioneer, Monsanto, and AgReliant ("Investigating Companies") exist. Specifically:

    a.      Pioneer private investigators interviewed witnesses, and endeavored to obtain identifications (Exhibit B at 1-2, ¶¶ 12-13; 3-5);

    b.      Early in the case, the government met with Pioneer and provided a background of the facts and legal theories for its case, including difficulties in meeting its burden, and asked for assistance in doing so (Exhibit B at 6);

    c.      The government contacted the Investigating Companies throughout its investigation to keep the Companies apprised as to the status of the investigation, and provided non-public law enforcement intelligence, such as facts learned in surveillance and through other investigative means (Exhibit B at 12; 14; 15; 17; 19);

    d.      The government tasked the Investigating Companies with factual research and received information from the Companies in response (Exhibit B at 11; 22; 28 (demonstrating company's internal emails were provided to the government));

    e.      Pioneer provided patent application information about its products to the government, and the parties shared specific information about the intellectual property status of particular corn brands (Exhibit B at 30; 31; 35);

      f.     All three Investigating Companies worked with the government on attempted scientific analyses of seed evidence in this case (Exhibit B at 32-35; 36; 37; 38); and

      g.     Pioneer obtained direction from the government with respect to its own business practices in light of this case, including whether to interview its own employees, and with regard to keeping from public knowledge its efforts to protect its intellectual property. (Exhibit B at 39)

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

Executed this *15th* day of December, 2014, at Des Moines, Iowa.

_____
MARK WEINHARDT