**UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF IOWA**

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | Case No. 4:13-CR-147 |
| ) | |
| v. ) | |
| ) | |
| LI SHAOMING, MO HAILONG, also known ) | |
| as Robert Mo, WANG LEI, ) | |
| WANG HONGWEI, YE JIAN, LIN YONG, ) | |
| and MO YUN ) | |
| ) | |
| Defendants. ) | |

**NON-PARTY MONSANTO COMPANY'S**
**MOTION TO QUASH SUBPOENAS ISSUED BY THE DEFENDANTS**
**AND MEMORANDUM IN SUPPORT**

Pursuant to Federal Rule of Criminal Procedure 17(c) and 18 U.S.C. 1835, non-party Monsanto Company ("Monsanto") respectfully submits this motion to quash the subpoenas issued by Defendant Mo Hailong, served on January 30, 2015, and Defendant Mo Yun, served on February 2, 2015, which were modified on February 24, 2015, and its accompanying memorandum in support.

**INTRODUCTION**

Defendants have been indicted under the Economic Espionage Act ("EEA"), 18 U.S.C. §§ 1832(a)(1)–(a)(5), for conspiring to steal Monsanto's trade secrets. Now, to obtain "discovery" to support their criminal defense—discovery that they claim they have not yet received from the Government—Defendants have served overbroad subpoenas, demanding that Monsanto be burdened with having to produce the very type of highly confidential, trade secret information that the Defendants were indicted for having conspired to steal.

1

Generally, "trade secrets are to be protected to the fullest extent during EEA litigation," and not subject to disclosure to a criminal defendant charged with conspiracy to steal them. *U.S. v. Hsu*, 155 F.3d 189, 197 (3d Cir. 1998) (emphasis added). Here, Defendants' subpoenas seek confidential and trade secret documents encompassing as many as 266 different Product ID numbers. It would be self-defeating if the law required a victim to disclose very confidential trade secrets to an accused thief in the course of prosecution, as that would cause the harm that the EEA is designed to prevent.

The subpoenas should be quashed in their entirety, for four independent reasons. ***First, the subpoenaed trade secrets are irrelevant to the charges filed by the Government, and not subject to disclosure***. As this Court has already ruled in denying Defendants' motion for a bill of particulars, "the Government is simply not obligated to provide proof that the Defendant sought to steal actual trade secrets to prove the conspiracy alleged in this case," Dkt. 133 at 8. That is true because "proof that the defendants sought to steal actual trade secrets is not an element of the crimes of attempt or conspiracy under the EEA." *Hsu*, 155 F.3d at 204. The Defendants, having failed in their attempt to secure this information from the Government, are simply not entitled to obtain that information from the victim of their crime. Defendants are not entitled to discovery of trade secrets, because their requests are fundamentally irrelevant to a claim of conspiracy.

***Second, Defendants' demands are overbroad, unduly burdensome, and not specific***. Defendants' ***22 requests*** seek information on every visit Defendants made to Monsanto (information the Defendants themselves can provide), information on the corn varieties Monsanto grew on at least seven different farms from which they purportedly attempted to steal Monsanto's trade secrets, documents concerning 266 different Product ID numbers, and

information on testing conducted by the Government, not Monsanto.  A criminal subpoena must seek information that is relevant, admissible and specific.  Fed. R. Crim. P. 17(c).  Overbroad subpoenas, served without specificity, and with a "mere hope" that something useful may turn up, do not qualify, particularly when the disclosure would cause the very harm that the underlying charge is designed to avoid.  *U.S. v. Hang*, 75 F.3d 1275, 1283 (8th Cir. 1996).

***Third, Defendants' requests are premature***.  Defendants are placing the burden on Monsanto to provide information that they have not yet received from the Government. Defendants have conceded that the discovery they seek from the Government would likely significantly limit or eliminate what they need from Monsanto.  Defendants' counsel have represented, however, that they have no choice but to pursue the instant discovery against the third-party victim seed companies because: (i) they are still awaiting information from the Government; and (ii) they felt they could not wait for further Government disclosures due to the looming March 30, 2015 motion deadline.  Rule 17, however, does not allow for duplicative discovery.  Defendants should continue to work with the Government to identify those products that will be ultimately at issue in the Government's case.  Once that process is complete – then and only then – may it be appropriate for Defendants to seek additional information from the victim seed companies.  To the extent the March 30, 2015 deadline is inhibiting the ability for the process between the Government and Defendants to play out, Monsanto respectfully requests that the Court consider modifying the March 30, 2015 deadline.

***Fourth, if any discovery is ordered, an appropriate protective order should be issued than can adequately protect Monsanto's trade secrets***.  That protective order, at a minimum, should provide that Monsanto's trade secret information would not be viewed directly by Defendants and such information would only be subject to inspection by Defense Counsel at a

location of Monsanto's choosing. Finally, any such order should permit Monsanto the ability to seek further protections to the extent any such trade secret information is ultimately to be offered at any trial in this matter.

## BACKGROUND

### A. The Defendants Have Been Charged With Conspiring to Steal Monsanto's Trade Secrets

On December 17, 2013, the government brought criminal charges against Chinese nationals Li Shaoming, Mo Hailong, Wang Lei, Wang Hongwei, Ye Jian, and Lin Yong. (Dkt. 6.) A superseding indictment was issued on July 2, 2014, that added Defendant Mo Yun. (Dkt. 57.) In the superseding indictment, the government brought the same charge against all Defendants, namely, "Conspiracy to Steal Trade Secrets," under the EEA, 18 USC 1832(a)(5), and accused the Defendants of conspiring to "steal, appropriate, take, carry away, and conceal, trade secrets belonging to" seed companies, including Monsanto, and then "without authorization transmit, deliver, send and mail [the ] trade secrets." (Dkt. 57 ¶ 25).

### B. The Court Denied Defendant Yun's Bill of Particulars

On August 28, 2014, Defendant Yun made a motion for a bill of particulars. (Dkt. 97.) Specifically, Defendant Yun requested that the Government be instructed to provide the following detailed information:

- The specific seeds purported to have been misappropriated by Defendant Mo and/or her alleged co-conspirators, identified by company (Monsanto, Pioneer, etc.), model number and year developed.

- The specific aspect of each seed that is alleged to have been a trade secret (or that the defendant [sic] are alleged to have believed was a trade secret).

- Whether the particular seeds at issue were inbred, hybrid, and/or genetically modified.

4

- The specific locations, including the address, owner, and other identifying information, from which the co-conspirators are alleged to have acquired the seeds in question, whether it was a growing field, seed store, or other source.

- The dates of each alleged misappropriation of seeds.

- The specific security measures purported to have been in place at those locations at the time of the alleged misappropriation.

(Dkt. 133 at 4.) Defendant Yun claimed that without such information, it will be impossible for her to "discern what trade secrets she is accused of conspiring to steal, or why it is alleged that she believed those to be trade secrets." (*Id.* at 5.)

This Court denied Defendant Yun's motion, finding:

> "[b]ecause Defendant is charged with *conspiring* to steal trade secrets rather than with the substantive offense of *actually* stealing trade secrets, the Government only needs to prove at trial that Defendant and her co-conspirators *believed* the items to be stolen were trade secrets, not that they *actually were* trade secrets."

(*Id.* at 7-8.) (emphasis in original.) The government did not need to provide any further information to the Defendants. (*Id.*)

### C. Defendants Issued Overbroad Subpoenas and Then Failed to Properly Limit Them After a Meet and Confer

In the face of the Court's order regarding the scope of charges against them, Defendants served two broad, wide-ranging subpoenas on Monsanto on January 30, 2015 and February 2, 2015. These subpoenas seek Monsanto's trade secret and proprietary information, as well as the specific security measures it has taken protect these trade secrets—information this Court has already found is irrelevant to Defendants' defense.

The subpoena served by Defendant Hailong made 19 different requests. (Ex. A). The first fifteen requests and Request 18 concerned Defendants' visits to Monsanto's facilities, alleged assistance provided by Monsanto to Defendants, and Monsanto's security measures. (*Id.*

5

¶¶ 1-15, 18.)  Defendants argued in their motion for a bill of particulars that this information was necessary in order to show whether the items alleged to be stolen were trade secrets.  (Dkt. 133 at 7, n.4 ("Defendant contends this information is required because in order to be considered a trade secret, its owner must have taken 'reasonable measures' to prevent the secret from disclosure.").)  Requests 16 and 17 seek Monsanto's "Intellectual Property Information Concerning Alleged Seeds at Issue," and Request 19 seeks Monsanto's testing of field corn seeds.  (Ex. A ¶¶ 16-17, 19.)  The Court rejected that assertion.

Defendant Hailong is plainly seeking information to identify Monsanto's trade secrets.  For instance, he demanded Monsanto's applications for protection under the Plant Variety Protection Act ("PVPA") for **28 different Monsanto Product ID numbers**.  (Ex. A ¶ 16).  The United States Department of Agriculture notes that these applications "contain[] *confidential and sensitive information*, such as descriptive characteristics of the new Variety or other similar varieties."[1]  In addition, Defendant Hailong requested documents "to identify the varieties of Monsanto field corn grown on the [Bondurant, Mansfield, Arrowsmith, Foosland, Dewey, Rantoul, and] Farmland in or about August 2012."  (*Id*. ¶¶ 4a, 5a, 6a, 7a, 8a, 9a, 10a).  His requests seek Monsanto's confidential information about the varieties grown on those various farmlands.  Finally, he has also requested Monsanto's "testing of field corn seeds … provided by the government … in connection with the MO Matter, including all test results."  (*Id*. ¶ 19.)  These are test results relating to the very same proprietary seeds Defendants are accused of conspiring to steal.

The subpoena from Defendant Yun sought even more trade secret and proprietary information, to identify the trade secrets that Defendants are alleged to have conspired to steal.

---

[1] http://www.ams.usda.gov/AMSv1.0/ams.fetchTemplateData.do?more=M.OptionalText1&template=TemplateM&navID=PVPOApplicationRequirements&page=PVPOApplicationRequirements&description=PVPO-Application%20Requirements (emphasis added).

First, she requested all of the documents that Defendant Hailong seeks. (Ex. B ¶ 1). She then requested "applications for protection under the PVPA" for **238 different Product ID numbers**. (*Id*. ¶ 2). Defendant Hailong next sought documents "sufficient to identify or describe [Monsanto's] efforts to legally protect the intellectual property for all 238 different Product ID numbers, which is not only grossly overbroad and irrelevant, but also seeks attorney-client privileged information. (*Id*. ¶ 3). Finally, Defendant Hailong requested Monsanto's "breeding books," which contain Monsanto's confidential and trade secret information about Monsanto's breeding of its plant varieties. (*Id*. ¶¶ 4-5.)

After the subpoenas were served, Monsanto met with counsel for Defendants in an attempt to determine why such broad discovery was being sought by the Defendants. The Defendants stated that they had been unsuccessful in their attempt to require the Government to provide additional information about the charges. Defendants further indicated that while the Government had provide some information to the Defendants, they have not yet received all of the material they believe they are owed from the Government, including the very information they are requesting from Monsanto. To that end, Defendants indicated that their only option was to pursue this information directly from the third-party seed company victims in the form of the instant subpoenas.

In the meet and confers held among Defendants and the third-party seed companies (including Monsanto), Defendants were repeatedly advised of the seed companies' deep concern about the information being sought, which included some of these companies' most sensitive trade secrets. After those meet and confers, Defendants provided updated subpoenas, which are what is at issue in this Motion. *See* Exs. C and D. The stated goal of these updated subpoenas was to lessen the scope of the information, in particular, the trade secret information being

7

sought. In reality, those modified subpoenas did not limit the subpoenas in any meaningful way. For instance:

- Defendant Hailong's first two requests and Request 16 still concern all of Defendants' visits to Monsanto's facilities, alleged assistance provided by Monsanto to Defendants, and Monsanto's security measures. (Ex. C ¶¶ 1-10, 16.)

- Requests 4 through 10 seek "[d]ocuments sufficient to identify" the corn varieties Monsanto grew on *seven different* farms. (*Id*. ¶¶ 4-10).

- Requests 11 through 13 seek "all contracts and agreements" with various grower entities for a two year period. (*Id*. ¶¶ 11-13.)

- Request 14 seeks documents "sufficient to identify when Monsanto first began requiring purchasers of field corn seeds" to sign grower agreements. (*Id*. ¶ 14.)

- Request 15 seeks Monsanto's applications for protection under the PVPA for the same 28 different Monsanto Product ID numbers Defendant Hailong first requested. (*Id.* ¶ 15).

- Requests 17 and 18 seek test results and protocols conducted by the government or sent to the government relating to the very same proprietary seeds Defendants are accused of conspiring to steal. (*Id*. ¶¶ 17-18.)

Defendant Yun's attempts to limit her subpoena fared no better. For example:

- She still requests applications for protection under the PVPA for the same 238 different Product ID numbers. (Ex. D ¶ 2.)

- Requests 3 and 4 still seek Monsanto's "breeding books." While she attempts to limit these requests by offering to take "any compilation of information, data or records sufficient to identify which Monsanto patent or PVPA application[s]," (*id*. ¶¶ 3-4), that information is still highly sensitive and confidential.

## **LEGAL STANDARD**

Rule 17(c) of the Federal Rules of Criminal Procedure governs the scope of subpoenas in a criminal case. "The scope of Rule 17(c) is more narrow than the corresponding rules of civil procedure, which permit broad discovery." *United States v. Shepard*, 2010 WL 750110, at *1 (E.D.Mo. Feb. 26, 2010). Rule 17(c) was not intended to serve as a discovery device for criminal cases. *United States v. Nixon*, 418 U.S. 683, 698 (1974); *United States v. Bueno*, 443

F.3d 1017, 1026 (8th Cir.2006). To gain access to the desired documents, the party seeking such documents must show that the subpoenaed documents are: (1) relevant; (2) admissible; and (3) identified or described with adequate specificity. *Nixon*, 418 U.S. at 700; *U.S. v. Stevenson*, 727 F.3d 826, 831 (8th Cir. 2013) (quashing individual defendant's subpoena to corporate entity for failure to meet Rule 17's requirements).

Rule 17(c)(3) "puts additional protections in place for the . . . confidential information of victims." *United States v. Crutchfield*, 2014 WL 2569058, at *1 (N.D.Ca. June 6, 2014). The Rule "implements the Crime Victims' Rights Act, codified at 18 U.S.C. § 3771(a)(8), which states that victims have a right to respect for their 'dignity and privacy.' The rule provides a protective mechanism … when the defense subpoenas a third party to provide personal or confidential information about a victim." FED. CR. R. 17 (2008 Advisory Committee Notes). Additionally, "*trade secrets are to be protected to the fullest extent during EEA litigation*." *Hsu*, 155 F.3d at 197 (emphasis added). Specifically, the EEA provides:

> In any prosecution or other proceeding under this chapter, the court shall enter such orders and take such other action as may be necessary and appropriate to preserve the confidentiality of trade secrets, consistent with the requirements of the Federal Rules of Criminal and Civil Procedure, the Federal Rules of Evidence, and all other applicable laws.

18 U.S.C. § 1835 (2014).

## ARGUMENT

### I. THE SUBPOENAS SEEK TRADE SECRET INFORMATION THAT IS IRRELEVANT TO THE CRIME CHARGED

Defendants' subpoenas are apparently designed to prove that what they are accused of conspiring to steal were not actually trade secrets of Monsanto. But whether or not something is a trade secret is irrelevant to the charge of Conspiracy to Steal Trade Secrets under the EEA. As such, Defendants fail to meet the basic relevancy prong of Rule 17(c).

9

This Court has already ruled on this issue in this case. "Because Defendant is charged with *conspiring* to steal trade secrets rather than with the substantive offense of *actually* stealing trade secrets, the Government only needs to prove at trial that Defendant and her co-conspirators *believed* the items to be stolen were trade secrets, not that they *actually were* trade secrets." (Dkt. 133 at 7-8.) (emphasis in original.) "Stated another way, the Government is simply not obligated to provide proof that the Defendant sought to steal actual trade secrets to prove the conspiracy alleged in this case." (*Id.* at 8.) "Indeed, Defendant can be convicted of conspiracy pursuant to 18 U.S.C. § 1832(a)(5) even if her intended acts were legally impossible." (*Id.*)

This Court's decision was based on *United States v. Hsu,* 155 F.3d 1897 (3d Cir. 1998). There, the defendants were charged with a conspiracy to steal corporate trade secrets from Bristol–Myers Squibb, in particular the processes, methods, and formulas for manufacturing Taxol, an anti-cancer drug. *Id*. at 191-92. Shortly after the indictment was returned, the defense requested Bristol–Myers's documents, arguing that they needed the documents to establish the defense of legal impossibility, because they could not be convicted of conspiracy to steal trade secrets if the documents did not actually contain trade secrets. *Id*. at 193. The Third Circuit rejected that argument, finding that "the Taxol trade secrets in the Bristol–Myers documents are not 'material' to the preparation of the defendants' impossibility defense, because proof that the defendants sought to steal actual trade secrets is not an element of the crimes of attempt or conspiracy under the EEA." *Id*. at 204. Thus, the Third Circuit denied the requested discovery of Bristol-Myers Squibb's trade secrets.

Since *Hsu,* every other court that has looked at this issue has also held that impossibility is not a defense to attempt or conspiracy to commit a violation of the EEA. *See United States v. Yang*, 281 F.3d 534, 544 (6th Cir. 2002) (affirming district court ruling that legal impossibility is

not a defense to violations of Sections 1832(a)(4) and (a)(5)); *United States v. Martin*, 228 F.3d 1, 13 (1st Cir. 2000) ("Martin's final argument – that he actually received no trade secrets – even if true, is irrelevant. Martin has only been found guilty of a conspiracy to steal trade secrets, rather than the underlying offense. The relevant question to determine whether a conspiracy existed was whether Martin intended to violate the statute.") *See also United States v. Lange*, 312 F.3d 263, 268 (7th Cir. 2002) (J. Easterbrook) ("We agree with the general approach of these decisions. *Hsu* analogized the attempted sale of information believed to be a trade secret to an attempt such as shooting a corpse, believing it to be alive, or selling sugar, believing it to be cocaine. Events of this sort underlie the maxim that factual impossibility is no defense to a prosecution for attempt."); *United States v. Nosal*, 2013 WL 4504652, *12 (N.D.Cal. Aug. 15, 2013) ("Even if the source lists had not been trade secrets – and thus the object of the conspiracy had been impossible – Defendant and his co-conspirators could have still acted culpably in conspiring to steal what they firmly believed to be trade secrets.")

Consistent with this Court's ruling on the motion for a bill of particulars, the Eighth Circuit has also held that "[f]actual impossibility is not a defense to an inchoate offense such as conspiracy or attempt." *U.S. v. Rehak*, 589 F.3d 965, 971 (8th Cir. 2009). In *Rehak*, the objective of defendants was to take the money of a drug trafficker, Vincent Pelligatti. Their goal, to keep his money as their own, violated the law. The Eighth Circuit found that "the fact that Pelligatti was fictitious was unknown to Rehak and Naylon. This circumstance prevented them from actually violating a person's due process rights. While it was factually impossible to violate his rights, defendants were charged and convicted of conspiring to violate his rights. The crime was committed upon their agreement to steal his money. That they were unsuccessful is irrelevant to their culpability for conspiring." *Id.*

In short, there is no legal relevance to the information that the subpoenas seek from Monsanto. The Court denied Defendants' request to obtain it from the Government, and it necessarily follows that Defendants cannot obtain it from the victim of their alleged conspiracy.

## II. THE SUBPOENAS ARE OVERBROAD, DO NOT SEEK INFORMATION WITH ADEQUATE SPECIFICITY, AND RESPONDING WOULD BE UNDULY BURDENSOME TO MONSANTO

"Specificity is the hurdle on which many subpoena requests stumble." *United States v. Ruedlinger*, 172 F.R.D. 453, 456 (D. Kan. 1997). "If the moving party cannot reasonably specify the information contained or believed to be contained in the documents sought but merely hopes that something useful will turn up, this is a sure sign that the subpoena is being misused." *United States v. Shanahan*, 252 F.R.D. 536, 540 (E.D. Mo. 2008). The specificity requirement demands more than the title of a document and conjecture concerning its contents. *United States v. Hardy*, 224 F.3d 752, 755 (8th Cir. 2000). The requirement ensures that a Rule 17(c) subpoena will not be used just to see "what may turn up." *United States v. Libby*, 432 F.Supp.2d 26, 32 (D. D.C. 2006).

"The specificity requirement also ensures that a subpoena will only be used to secure, for trial, a sharply defined group of documents." *Shepard*, 2010 WL 750110, at *1. Even when the moving party has shown that a subpoena seeks specific evidence, the request cannot be a general "fishing expedition," *See Nixon*, 418 U.S. at 699-700, and a "district court may still properly quash a subpoena under Rule 17(c) if 'compliance would be unreasonable or oppressive.' Thus, a district court may, in its discretion, determine whether 'the burden of producing subpoenaed records greatly outweighs any relevance they may have to the case.'" *Hardy*, 224 F.3d at 756 (8th Cir. 2000) (citations omitted.)

Defendants have admitted that the reason for these subpoenas is that they have not been able to receive the information they seek from the government, either through documents, or a bill of particulars. As such, they have put the burden on Monsanto—the victim—to provide information on an overly broad, burdensome range of topics, with no specificity to the requests. For instance, Defendant Hailong requests the test results and protocols, "*provided by the Government to you or provided by you to the Government*." (Ex. C ¶¶ 17-18.) These requests should obviously be made on the Government, and not place the burden on a victim in this case.

In addition, Defendant Hailong makes 16 other requests (*18 separate requests in total*) on Monsanto, all of which are overbroad, not specific, and would require a substantial burden, including:

- **Visits to Monsanto:** Requests 1, 2, and 16 seek documents on every visit Defendants' allegedly made to Monsanto from as far back as 2007. (Ex. C ¶¶ 1-2.) This information could be just as easily gathered from the Defendants themselves. Moreover, Monsanto believes that the Defendants likely used aliases to gain access to Monsanto, therefore making this information impossibly burdensome to find.

- **Documents and communications with Beijing Kings Nower Seed Science & Technolog. Ltd ("BKN") and Beijing Dabeinong Technology Group Control ("DBN"):** Request 3 seeks "[c]ommunications and documents concerning potential cooperation, business engagements or information exchanges between Monsanto and DBN or BKN" from 2006 through 2012. (*Id.* ¶ 3.) While Defendant Hailong provides examples of such communications, he does not limit his request to those examples, and provides no specificity as to what specific documents he seeks. Defendant Hailong also fails to describe why this information could not come from BKN and/or DBN, who are not victims in this case.

- **Documents, photographs, and grower agreements on multiple different farmlands:** Requests 4 through 10 seek "[d]ocuments sufficient to identify" the corn varieties Monsanto grew on *seven different* farms. (*Id*. ¶¶ 4-10). Defendant Hailong could not get this information from the government, so he is placing the burden on Monsanto. Further, rather than request specific documents, Defendant Hailong leaves Monsanto at its own peril of determining what is "sufficient."

13

- **Contracts concerning sales of Monsanto field corn seed:** Requests 11 through 13 seek "*all* contracts and agreements" concerning sales of Monsanto field corn seed to Aaaron Mason, Whitney Mason, and MFA Agri Services for a two year period. (*Id*. ¶¶ 11-13) (emphasis added.)  The burden of providing "all" materials, certainly outweighs whatever relevance these documents might have, which Defendant Hailong has yet to explain.

- **The dates when Monsanto first began requiring purchasers of field corn seeds at MFA Agri Services to sign grower agreements, technology agreements, use restriction agreements, or other agreements.** Rather than seeking specific documents, Defendant Hailong places the burden on Monsanto to produce documents "sufficient to identify" when Monsanto first began requiring purchasers of field corn seeds to sign "grower agreements, technology agreements, use restriction agreements or other agreements." (*Id*. ¶ 14.)  There is no specificity in this request, other than identifying MFA Agri Services, which leaves Monsanto at the peril of determining what is sufficient, what agreements Defendant Hailong seeks, and which "purchasers of field corn" he is requesting about.

- **Patent applications for 28 different Product ID numbers.** Again, Defendant Hailong does not seek specific documents relating to the 28 different Product ID numbers, but rather asks for "documents sufficient to identify" PVPA application and application numbers for the 28 different Product ID numbers.  This is not what Rule 17 requires.

Defendant Yun's requests are no better.  She is essentially making *22 separate requests.* First, she makes all the same requests as Defendant Hailong. (*See* Ex. D ¶ 1.).  Next, she seeks information relating to **238 different Product ID numbers**, hardly "a sharply defined group of documents," and which would unduly burden Monsanto, because most of these Product ID numbers will likely not be at issue in this prosecution.  Moreover, none of her revised requests seek specific documents by title, but rather ask for:

- "*Documents sufficient to identify*" the 238 different Product ID numbers. (Ex. D ¶ 2.) (emphasis added).  Rather than request specific documents, this Request leaves Monsanto at the peril of determining what is "sufficient."

- "Your 'breeding book' or, alternatively, *any compilation of information, data or records sufficient to identify*" for the 238 different Product ID numbers and 28 different Product ID numbers identified in the Hailong subpoena   (*Id*. ¶¶ 3-4.) (emphasis added).  Requesting "any compilation of documents" provides no specificity for what Defendant Yun is seeking, and puts a special burden on

14

>Monsanto since Defendant Yun seeks this information for 266 different Product ID numbers.

Defendants merely hope to find relevant documents with overbroad, non-specific, requests, which do nothing but place an undue burden on Monsanto, "[A] Rule 17(c) subpoena cannot properly be issued upon a 'mere hope.'" *U.S. v. Hang*, 75 F.3d 1275, 1283 (8th Cir. 1996).

## III. DEFENDANTS' REQUESTS ARE PREMATURE

Defendants advised Monsanto that they either have not been able to obtain, or are still awaiting, additional discovery from the Government that would inform Defendants of the scope of the trade secrets at issue in the case. Defendants further maintain that with this information they may be able to eliminate from the case at least certain of the products that are covered by a patent, which they believe cannot be the subject of a trade secret. Unable to obtain this information from the Government, and faced with a March 30, 2015 motion deadline, Defendants issued the instant subpoenas to obtain from the victims what they have to date been unable to secure from the Government.

Duplicative discovery is not allowed under Rule 17. *See United States v. Bigi*, 2011 WL 83095, at *2 (S.D. Ohio Mar. 3, 2011) (granting third-party companies' motion to quash because "the second category of documents requested duplicates discovery already provided to Defendant pursuant to Rule 16."). To the extent that the information Defendants seek has or will be provided by the Government, then the subpoenas directed to Monsanto should be quashed as duplicative.

Alternatively, to the extent it is unclear whether the information yet to be provided by the Government is duplicative to that sought in the subpoenas, then the subpoenas should be held in

abeyance, allowing the Government and Defendants to limit the scope of the products that are the subject of the trade secret allegations. Once that process is complete – then and only then – may it be appropriate for Defendants to seek additional information from the victim seed companies. To the extent the March 30, 2015 deadline is inhibiting the ability for the process between the Government and Defendants to play out, then Monsanto respectfully requests that the Court consider modifying the March 30, 2015 deadline.

### IV. IF ANY DOCUMENTS ARE PRODUCED, AN APPROPRIATE PROTECTIVE ORDER MUST BE ISSUED

Under 18 U.S.C. § 1835 of the EEA, a court is directed to "enter such orders and take such other action as may be necessary and appropriate to preserve the confidentiality of trade secrets." Courts have found that this means a protective order must be in place before any trade secret information is disclosed.

For instance, in *Hsu*, the Third Circuit held that courts are required to enter protective orders and take such other action as may be necessary and appropriate to preserve the confidentiality of trade secrets, consistent with the requirements of the Federal Rules of Criminal and Civil Procedure, the Federal Rules of Evidence, and all other applicable laws. 155 F.3d at 197 (the EEA "encourages enforcement actions by protecting owners who might otherwise 'be reluctant to cooperate in prosecutions for fear of further exposing their trade secrets to public view, thus further devaluing or even destroying their worth.'"). Similarly, in *United States v. Roberts,* 2010 WL 1010000 (E.D. Tenn. Mar. 17, 2010), the Court held that a protective order was required before trade secrets could be disclosed because a "certain absurdity exists in requiring [a victim] to publicly disclose the trade secrets at issue in a prosecution of the alleged theft and disclosure of those same trade secrets." *Id.* at *5.

Here, to protect Monsanto's interests, there must be a protective order in place. At a minimum, such a protective order would need to provide that any trade secret information would be produced for inspection at a site chosen by Monsanto. Moreover, the inspection should be conducted by a neutral court-appointed third party, or only reviewed by the criminal Defendants' attorneys (rather than the Defendants themselves). Furthermore, the other seed company victims should not be able to see such information, as they are competitors of Monsanto. To the extent a party wants to, and is not prevented from using this information at trial, Monsanto should be afforded an additional opportunity to petition the Court before trial regarding such use, and the proper security measures to be put in place keep this information confidential.

## CONCLUSION

For the foregoing reasons, Monsanto respectfully requests that the Court grant its motion to quash the Defendants' subpoenas, and award any other relief that the Court finds appropriate.

Dated: March 4, 2015

                Respectfully submitted,

                HUSCH BLACKWELL LLP

         By:  /s/ Joseph C. Orlet
             Joseph C. Orlet, #2426
             190 Carondelet Plaza, Suite 600
             St. Louis, Missouri 63105
             Joseph.orlet@huschblackwell.com
             314-480-1500 (Telephone)
             314-480-1505 (Facsimile)

             Matthew T. Schelp, *Pro Hac Vice Pending*
             190 Carondelet Plaza, Suite 600
             St. Louis, Missouri 63105
             Matthew.schelp@huschblackwell.com
             314-480-1500 (Telephone)
             314-480-1505 (Facsimile)

And

WINSTON & STRAWN LLP
Rosenthal, John J., *Pro Hac Vice Pending*
1700 K Street, N.W.
Washington, D.C. 20006-3817
jrosenthal@winston.com
(202) 282-5785 (Telephone)
(202) 282-5100 (Facsimile)

**ATTORNEYS FOR NON-PARTY
MONSANTO COMPANY**