IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF IOWA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>    Plaintiff,<br><br>v.<br><br>MO HAILONG, also known as Robert Mo,<br><br>    Defendant. | Case No. 4:13-CR-147<br><br>DEFENDANT MO HAILONG'S MEMORANDUM IN SUPPORT OF MOTION *IN LIMINE* TO EXCLUDE UNDUE REFERENCE TO CHINESE ETHNICITY OR NATIONALITY AND TO EXCLUDE EVIDENCE REGARDING CHINESE ESPIONAGE CASES |

The Defendant, Mo Hailong, submits this Memorandum in support of his motion *in limine* to exclude the undue reference to Chinese ethnicity or nationality at trial and to exclude evidence, testimony, and argument regarding Chinese espionage cases.

## INTRODUCTION AND FACTUAL BACKGROUND

Public press and government discovery display an alarming number of invidious statements and categorical assumptions about the People's Republic of China ("PRC"), Chinese nationals, and individuals of Chinese descent. Mr. Mo asks the Court to limit the government's use of Mr. Mo's (or any other defendant's or witnesses') ethnicity or nationality to where necessary, such as limited identification testimony. The superfluous use of ethnicity or nationality risks prejudicing Mr. Mo before his jury.

Public press has also recently included extensive discussions of espionage and alleged espionage targeted at U.S. interests by Chinese nationals, Chinese companies and Chinese government agents. This coverage includes discussion of other criminal investigations and prosecutions of Chinese individuals. Mr. Mo asks that the Court exclude evidence, testimony,

and counsel statements related to any of these actual or alleged PRC espionage incidents. This evidence is irrelevant to Mr. Mo's culpability and is highly prejudicial.

A. Public Press and U.S. Policy

Mr. Mo is a Chinese national accused of economic espionage amidst widespread U.S. fear of Chinese economic espionage. *See, e.g.*, Jeff Stein, *May A Thousand Spies Bloom*, NEWSWEEK, Jan. 16, 2014 (warning against "an eruption of Chinese espionage").[1] These fears come in tandem with public policy that comes straight from the top. In 2013, President Obama announced a "strategy to fight back" against Chinese espionage, and "more than half of the economic espionage indictments since 2013 have had a China connection." *See* Nicole Perlroth, *The Spy Who Wasn't*, N.Y. TIMES, May 10, 2015, at BU1.[2]

The FBI also plays a role in asking the public to share its suspicions about Chinese individuals. *See, e.g.*, Elias Groll, *FBI Rolls Out Red Scare Film to Highlight Threat of Economic Espionage*, FOREIGN POLICY, July 23, 2015.[3] News articles following the FBI's announcement of Mr. Mo's arrest report the events as Chinese espionage. *See, e.g.*, Christopher Burgess, *Espionage in the Heartland: Corn to China*, PREVENDRA, Dec. 16, 2013;[4] John Eligon and Patrick Zuo, *Designer Seed Thought to Be Latest Target by Chinese*, N.Y. TIMES, February

---

[1] http://www.newsweek.com/2014/01/17/may-thousand-spies-bloom-245082.html.

[2] http://www.nytimes.com/2015/05/10/business/accused-of-spying-for-china-until-she-wasnt.html?_r=0

[3] http://foreignpolicy.com/2015/07/23/fbi-rolls-out-red-scare-film-to-highlight-threat-of-economic-espionage/

[4] http://www.prevendra.com/espionage-heartland-corn-china/

5, 2014, at A12;[5] David Martin, Watch: *Unraveling the Great Chinese Corn Seed Spy Ring*, AMERICA TONIGHT, Oct. 6, 2014.[6] For example, a Newsweek article made the following statements: "While the CIA is chasing terrorists across the deserts, the Chinese are chasing U.S. brain products from coast to coast;" the "former head of the National Counterintelligence Executive" said "most people don't realize that part of, that [China's] growth is fueled by a state-run systematic program of theft, pure and simple;" "The Chinese are uncommonly clever and patient;" "[f]ollowing an eruption of Chinese espionage in Wisconsin…;" "China's agents will roam virtually free, vacuuming up U.S. secrets." Jeff Stein, *May A Thousand Spies Bloom*, NEWSWEEK, Jan. 16, 2014.[7] Moreover, this alarmist sentiment has reached Iowa. *See e.g.,* Chris Bennett, *Chinese Seed Thieves Hit US Farmland* ("Foreign seed spies are literally crawling around on U.S. farmland."). *Feds Hit Back*, Farm Press Blog, Dec. 13, 2013; Rod Boshart, *Chinese National Arrested in Seed Corn Conspiracy*, GLOBAL GAZETTE, July 2, 2014.[8]

Indeed, public sentiment and fear of Chinese economic espionage offers an explanation for the significant publicity in this case; a case where no substantive crime was alleged, where there are no corporate insiders passing secrets, and where there was no physical or electronic breach of any company—the allegations consist of a complex theory that attempts to place trade secrets among corn growing in open fields all over the Midwest, or worse, among seeds

---

[5] http://www.nytimes.com/2014/02/05/us/chinese-implicated-in-agricultural-espionage-efforts.html

[6] http://america.aljazeera.com/watch/shows/america-tonight/articles/2014/10/6/unraveling-the-greatchinesecornseedspyring.html

[7] http://www.newsweek.com/2014/01/17/may-thousand-spies-bloom-245082.html

[8] http://www.thegazette.com/subject/news/government/iowa/chinese-national-arrested-in-seed-corn-conspiracy-20140702

purchased in retail. As one former federal prosecutor explained in the context of a Chinese-American woman falsely accused of economic espionage, "[t]hey came across a person of Chinese descent and a little bit of evidence that they may have been trying to benefit the Chinese government, but it's clear that there was a bit of a Red Scare and racism involved." *Id.*; Nicole Perlroth, *22 Lawmakers Ask if Race Played Role in Espionage Case*, N.Y. TIMES, May 22, 2015,[9] at B2; (asking Attorney General Loretta Lynch to determine whether race played a factor in espionage-related charges against a Chinese-American hydrologist). Indeed, on the same day the government charged Mr. Mo, it charged Wengui Yan and Weiqiang Zhang with conspiring to steal rice-related trade secrets. *United States v. Zhang et al.*, 2:13-cr-20134-CM (D. Kansas).

B.  Use of Ethnicity and Nationality In This Case

Mr. Mo's Chinese ethnicity and nationality are irrelevant to any fact at issue in this case.[10] Nonetheless, the record contains numerous racially-charged witness statements. For example:

- The government repeatedly referenced "Asian" people to justify a suspicion about Mr. Mo and others. (Criminal Complaint at ¶¶ 5, 6, 7, 10, 19, 28, 29, 31.)
- The case agent believed the fact that Mr. Mo and Lijuan Zhao communicated in Mandarin (their native language) supported probable cause in support of a search warrant. (SA Mark Betten's Affidavit in Support of Warrant to Search Yahoo Email at ¶ 26.)

---

[9] http://bits.blogs.nytimes.com/2015/05/21/members-of-congress-ask-for-review-of-dropped-espionage-case/

[10] The government has sought to inject evidence of a link between Mr. Mo's employer, DBN, and the Chinese government. Mr. Mo has filed two motions to ask the Court to prevent their doing so, namely his Motion To Exclude Expert Testimony Regarding Chinese Corn Breeding And Yield, And Intellectual Property Protection In China (Dkt. 486), and his Motion *in Limine* to Exclude Evidence of DBN's Ties to The Chinese Government, filed at the same time as the instant motion.

- Government expert agronomist Kendall Lamkey, in his first meeting with the government and without having been given details about the investigation, "speculated that the executives in question were likely from China because of their aggressive attempts to acquire intellectual property." (Lamkey 2/11/13 Interview, FBI 1057, 2/12/13).

- Government witness Tim Schneider "speculated that the Asian males were likely trying to steal the corn seed for the benefit of a competitor to commit 'industrial espionage.'" (Schneider 1/26/12 Interview, FBI 302, 1/26/12)).

- Government witness Joel Thomas "was always somewhat suspicious of Robert given his apparent lack of knowledge concerning farming and vague answers about what he was doing, and the fact he was Asian who was not a native English-speaker..." (Thomas 9/17/12 Interview, FBI 302, 9/22/12).

## ARGUMENT

A. The Court Must Exclude Undue References to the Defendants' Ethnicity or Nationality.

Mr. Mo's ethnicity and nationality are plainly not relevant to his guilt. And while Mr. Mo's Chinese nationality could be properly included had the government charged an offense under 18 U.S.C. § 1831, no similar justification exists with the charged offenses sufficient to overcome the prejudice that follows. Any attempt to connect Mr. Mo or his co-conspirators' Chinese nationality or descent to the likelihood of their committing the alleged illegal activities—even indirectly—is improper and constitutes reversible error. *See, e.g., United States v. Vue,* 13 F.3d 1206, 1212-13 (8th Cir. 1994); *United States v. Cruz,* 981 F.2d 659, 664 (2d Cir. 1992); *United States v. Doe,* 903 F.2d 16, 17-21 (D.C. Cir. 1990). This includes off-hand or indirect statements related to race or nationality, as well as potentially relevant links between Mr. Mo and his co-conspirators or other individuals based on their nationality or race. *Id.; see also United States v. Ramirez-Fuentes,* 703 F.3d 1038, 1046 (7th Cir. 2013) (references to "Mexican methamphetamine" invited the jury, albeit implicitly, to consider Ramirez-Fuentes's nationality in reaching its decision in the case); *United States v. Rodriguez Cortes,* 949 F.2d 532, 540-42

(1st Cir. 1991) (evidence of Colombian nationality cannot be used to show criminal association with another Colombian).

The government's current evidence—which includes a number of racially-charged assumptions and statements from witnesses expected to testify at trial— risks that even a subtle reference to race or nationality in this case will improperly influence the jury's decision. *See, e.g., Doe*, 903 F.2d at 28 ("prosecutorial remarks kindling racial or ethnic predilections 'can violently affect a juror's impartiality'"). Here, existing prejudices support excluding under Rule 403 even highly relevant and otherwise admissible references to nationality and race. *See Doe*, 903 F.2d at 16, 22-23 (reversing a conviction based on the district court's failure to exclude evidence under Rule 403, and mentioning that where "the circumstances of a particular case indicate a significant likelihood that racial bias may influence a jury, the Constitution requires questioning as to such bias").

Permitting the government or witnesses to indirectly tie Mr. Mo or his alleged co-conspirators' nationality or ethnicity to the likelihood that they committed a crime constitutes prejudicial error of constitutional proportions. *See, e.g., Vue*, 13 F.3d 1206 at 1212-13 (reversing a conviction based on the district court's failure to exclude references to defendant's Hmong descent under Rule 403, because the introduction of "nationality evidence" was "highly improper" and an error "of constitutional dimension," which "invited the jury to put the [defendants'] racial and cultural background into the balance in determining their guilt"); *U.S. v. Cabrera*, 222 F.3d 590, 594, 596-97 (9th Cir. 2000) ("[a]ppeals to racial, ethnic, or religious prejudice during the course of a trial violate a defendant's Fifth Amendment right to a fair trial" and "[p]eople cannot be tried on the basis of their ethnic backgrounds or national origin").

### B. The Court Must Exclude Evidence, Testimony and Counsel Statements Regarding Chinese Espionage Cases.

The Court should not permit the government to offer any evidence, testimony, and counsel statements related to other actual or alleged PRC espionage incidents. Such wholly collateral information has no place in Mr. Mo's trial and must be excluded under Rules 401, 402 and 403.

As a threshold matter, any such evidence is irrelevant to Mr. Mo's culpability. Mr. Mo is responsible only for his actions, not the alleged actions of other Chinese individuals or entities— entities and individuals who are not charged in this case.

Moreover, using Mr. Mo's Chinese heritage to ask the jury to find an increased likelihood of his committing a crime is simply not permitted. Admitting evidence for this purpose—even indirectly—is improper and constitutes reversible error. *Vue,* 13 F.3d at 1212 (reversing conviction where witness stated "primarily the opium smuggling cases we have identified or we've investigated relate to Hmong individuals" and estimated that 95 percent of such cases in the area were attributable to persons of Hmong descent); *see also United States v. James,* 30 F.3d 84, 85 (8th Cir. 1994) (distinguishing its case from others "where references to ethnic origin were tied to implications of likelihood of involvement in criminal activity because of that ethnic origin, and therefore required reversal of a conviction"). It is an error "of constitutional dimension, because the injection of ethnicity into the trial clearly invite[s] the jury to put the [defendants'] racial and cultural background into the balance in determining their guilt." *Vue,* 13 F.3d 1206 at 1213; *see also Cruz,* 981 F.2d at 663-64 ("Injection of a defendant's ethnicity into a trial as evidence of criminal behavior is self-evidently improper and prejudicial for reasons that need no elaboration here."); *Doe,* 903 F.2d at 17-21 (expert testimony that the retail crack and

cocaine market in Washington, D.C. "has been taken over basically by Jamaicans" was unfairly prejudicial under Rule 403, because it "strongly suggested that appellants were guilty because two of them are Jamaican").

The risk of prejudice is high for additional reasons. Any reference to the PRC or other Chinese actions taps into existing prejudices, including (1) significant U.S. jury bias against any foreign litigants in intellectual property cases and (2) U.S. fears of Chinese economic espionage, fueled by government assumptions about the likelihood that a Chinese individual will commit trade secret theft. *See, e.g.,* Kimberly A. Moore, *Xenophobia in American Courts*, GEORGE MASON UNIVERSITY SCHOOL OF LAW, WORKING PAPER SERIES, 1504-1506, 1513[11] (an exhaustive 2003 study showing significant jury bias against any foreign litigant in an IP case); Jeff Stein, *May A Thousand Spies Bloom*, NEWSWEEK, Jan. 16, 2014;[12] Elias Groll, *FBI Rolls Out Red Scare Film to Highlight Threat of Economic Espionage*, FOREIGN POLICY, July 23, 2015.[13] In this context, any reference that might invite the jury to consider Mr. Mo's actions in the context of other cases brought against other Chinese individuals or the government's policies must be excluded under FRE 403. *See, e.g., United States v. Doe*, 903 F.2d at 28.

## CONCLUSION

For the reasons set forth above, Mo Hailong prays that the Court enter an order excluding undue use of Chinese ethnicity or nationality at trial and excluding evidence, testimony, and argument related to PRC espionage incidents.

---

[11] http://www.law.gmu.edu/pubs/papers/04-28

[12] http://www.newsweek.com/2014/01/17/may-thousand-spies-bloom-245082.html

[13] http://foreignpolicy.com/2015/07/23/fbi-rolls-out-red-scare-film-to-highlight-threat-of-economic-espionage/

Respectfully submitted,

WEINHARDT & LOGAN, P.C.

By: /s/ Holly Logan

| | |
|---|---|
| Mark E. Weinhardt | AT0008280 |
| Holly M. Logan | AT0004710 |
| P. Gail Brashers-Krug | AT0011806 |

2600 Grand Avenue, Suite 450
Des Moines, IA 50312
Telephone: (515) 244-3100
E-mail: mweinhardt@weinhardtlogan.com
         hlogan@weinhardtlogan.com
         gailbk@weinhardtlogan.com


MARK BECK LAW, A PROFESSIONAL CORPORATION

By: /s/ Mark Beck
   Mark Beck (Admitted *pro hac vice*)

350 West Colorado Blvd, Suite 200
Pasadena, CA 91105
Telephone: (626) 234-5334
E-mail: mbeck@markbecklaw.com


ATTORNEYS FOR DEFENDANT MO HAILONG, ALSO KNOWN AS ROBERT MO

PROOF OF SERVICE

The undersigned certifies that the foregoing instrument was served upon the parties to this action by serving a copy upon each of the attorneys listed below on _____, 2015, by

☐ U.S. Mail            ☐ FAX

☐ Hand Delivered       ☐ Electronic Mail

☐ FedEx/ Overnight Carrier   ☒ CM / ECF

Jason T. Griess
Assistant United States Attorney
jason.griess2@usdoj.gov

Marc Krickbaum
Assistant United States Attorney
marc.krickbaum@usdoj.gov

Signature: _____