IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF IOWA

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | Crim. No. 4:13-CR-00147 |
| v. ) | |
| ) | |
| MO HAILONG, ) | |
| ) | |
| Defendant. ) | |

**GOVERNMENT'S RESPONSE TO DEFENDANT'S MOTION TO EXCLUDE
EVIDENCE OF DBN'S TIES TO THE CHINESE GOVERNMENT**

Mo Hailong has moved to exclude any evidence connecting his company, DBN, to the Chinese government. Because DBN's connection to the Chinese government was a motive for Mo and other coconspirators to commit the crimes charged in the indictment, and because Mo and his coconspirators said so in clear terms, the court should deny his motion.

## BACKGROUND

In May 2012, Mo had a telephone conversation with Lijuan Zhao, who, at the time was working as a consultant for Stine Seeds. Mo told Zhao, "The leaders in China are paying a lot of attention to the seed industry." He continued by saying that China's Vice Minister of Agriculture visited DBN soon after the Vice Minister took office. Mo understood that the Vice Minister was there to "point out the direction" for Dr. Li Shaoming and the rest of DBN. Mo explained that DBN needed to follow the direction established by the Vice Minister, a point Mo said he "comprehended . . . very well." (Government Exhibit 1 at 4-5.) It was only a few

months later that Dr. Li, and other defendants stole Pioneer and Monsanto's inbred corn seed from fields in Illinois, and Mo joined Dr. Li and the other defendants in attempting to smuggle the stolen seed out of O'Hare airport, and eventually to China.

This was not the first time Mo or a coconspirator acknowledged receiving direction from the Chinese government. In April 2009, Dr. Li sent Mo a message urging Mo to step up his efforts—which in Mo's case meant stealing Pioneer and Monsanto's germplasm. Dr. Li wrote, "Pioneer's prowess [Pioneer's success selling hybrid seed in China] has shaken the Chinese government. There is a serious need for a national hero." (Government Exhibit 18 at 3).[1]

There is additional evidence that Mo and other defendants viewed the conspiracy not just as a way to make money for DBN, but as a patriotic cause. In August 2010, Mo and a DBN breeder discussed obtaining male parents from U.S. companies, and thereby "us[ing] the foreigners' technology to beat them." (Government Exhibit 15 at 4.) In February 2007, Dr. Li encouraged Mo to keep up the good work, saying, "The seed enterprise army wants to thank you." (Government Exhibit 2.) In July of 2008, Mo told Dr. Li that one of their coconspirators, "Young Guo," had drawn unwanted attention by trying to obtain seeds from "a seed parent warehouse." The operators of the warehouse had demanded to know why Guo wanted the seeds, causing Mo to lament that Guo

---

[1] Several exhibits referenced in this brief are also exhibits for the government's response to defendant's motion to exclude his chat conversations. For those exhibits, the government is using the same exhibit numbers in both briefs.

"underestimated the enemy." (Government Exhibit 8 at 2-3.)

## ARGUMENT

This and similar evidence is admissible because it shows the defendants' motive to steal Pioneer and Monsanto's germplasm. Mo's boss and coconspirator, Dr. Li, urged Mo to continue his efforts in the United States—stealing corn seed from Pioneer and Monsanto fields—not just to make money for DBN, but also to be a national hero. More generally, Mo understood clearly that DBN was to follow the direction of the Chinese government, which had a keen interest in China's seed industry. The conspirators viewed themselves as an "army" fighting an "enemy" as part of a patriotic cause. This evidence from the defendants' own mouths is highly probative of their motives in carrying out the conspiracy.

The probative value of the evidence is not outweighed by the risk of unfair prejudice. Mo cites no authority holding that the jury must be shielded from the defendant's own words, and the words of his coconspirators, explaining their reasons for committing the crime. And Mo's insistence that no one can mention his name in the same sentence as the Chinese government is without support.

The court of appeals does not require a criminal trial to be the sort of whitewash Mo demands. Eighth Circuit precedent is clear that because the exclusion of relevant evidence is an extraordinary remedy, when a district court considers evidence under Rule 403, "the general rule is that the balance should be struck in favor of admission." *United States v. Augustine*, 663 F.3d 367, 373 (8th Cir. 2011). Applying this presumption, the court of appeals has held that in a drug

case, a jury may hear that the defendant murdered a potential witness against him, because such evidence is relevant to prove the defendant's consciousness of guilt and is not unfairly prejudicial. *United States v. Castleman*, 795 F.3d 904, 914-16 (8th Cir. 2015). In two other cases, *United States v Ali*, 799 F.3d 1008 (8th Cir. 2015), and *United States v. Omar*, 786 F.3d 1104 (8th Cir. 2015), the Court affirmed the admission of expert testimony that the terrorist group al Shabaab identifies with al Qaeda, Osama bin Laden, and global jihad, and that the group uses suicide bombings and improvised explosive devices. *Ali*, 799 F.3d at 1016, 1028; *Omar*, 786 F.3d at 1107-08, 1112-13.

"[M]otive is always relevant in a criminal case, even if it is not an element of the crime." *United States v. Hill*, 643 F.3d 807, 843 (11th Cir. 2011). For this reason, evidence of the defendant's motive is broadly admissible, including evidence far more incendiary than the evidence at issue here, such as evidence that a defendant was motivated by a sexual interest in children. *See United States v. Roux*, 715 F.3d 1019, 1025 (7th Cir. 2011); *United States v. Rogers*, 587 F.3d 816, 821 (7th Cir. 2009); *United States v. Sebolt*, 460 F.3d 910, 917 (7th Cir. 2006).

Evidence showing that Mo and his coconspirators were motivated in part by patriotism or a desire to please the Chinese government is comparatively tame. But the evidence is also important. Mo's defense is that he enthusiastically took patented corn seed, but he never intended to cross the line by stealing trade secrets. The evidence described above, on the other hand, tends to show that Mo wanted to keep his employer DBN in favor with a Chinese government that demands high

corn yields so it can feed its people without relying on the United States. It also shows that Mo and Dr. Li wanted to be national heroes, and that they viewed their mission as part of a larger patriotic cause. This evidence makes it more likely Mo wanted the most valuable seed Pioneer and Monsanto had, including their trade secrets. Given Mo's insistence that his intent is the central issue at trial, he can't exclude evidence that fairly sheds light on that intent.

Mo has failed to give this court adequate reason to shield the jury from his actual words, and those of his coconspirators, about the reasons they acted the way they did. His position that the jury can't know the truth because the word "China" is too toxic for polite company has no support in either common sense or the law. The court should deny the motion.

## CONCLUSION

The court should deny Mo's motion to exclude evidence of DBN's ties to the Chinese government.

Respectfully Submitted,

Kevin E. VanderSchel
Acting United States Attorney

By:      /s/  Marc Krickbaum
_____
Jason Griess
Marc Krickbaum
Virginia Bruner
Assistant United States Attorneys
United States Courthouse Annex
110 East Court Avenue, Suite 286
Des Moines, Iowa 50309-2053
Tel: (515) 473-9300
Fax: (515) 473-9292
Email: marc.krickbaum@usdoj.gov

**CERTIFICATE OF SERVICE**

I hereby certify that on  December 22, 2015, I electronically  filed the foregoing with the Clerk of Court using the CM ECF system.  I hereby certify that a copy of this document was served on the parties or attorneys of record and the United States Probation Officer by:

____ U.S. Mail ____ Fax ____ Hand Delivery

_X_ ECF/Electronic filing ___ Other means (email)

UNITED STATES ATTORNEY

By:   /s/   Marc Krickbaum
          Assistant U.S. Attorney