UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF IOWA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | Case No. 4:13-CR-147 |
| v. | ) | |
| | ) | PLEA AGREEMENT |
| MO HAILONG, | ) | |
| also known as Robert Mo, | ) | |
| | ) | |
| Defendant. | ) | |

The United States of America (also referred to as "the Government") and the Defendant,

MO HAILONG, and Defendant's attorneys, enter into this Plea Agreement.

## A.   CHARGES

1.   <u>Subject Offense</u>.   Defendant will plead guilty to Count 1 of the Fourth

Superseding Indictment, (the "Indictment"), that is, Conspiracy to Steal Trade Secrets, in violation

of Title 18, United States Code, Section 1832(a)(5).

2.   <u>Charges Being Dismissed</u>.   If the Court accepts this Plea Agreement, Count 2 of

the Indictment will be dismissed at the time of sentencing.

3.   <u>No Further Prosecution</u>.   The Government agrees that Defendant will not be

charged in the Southern District of Iowa with any other federal criminal offense arising from or

directly relating to this investigation.   The government is not aware of any other pending criminal

investigation of Defendant.   This paragraph and this Plea Agreement do not apply to (1) any

criminal act occurring after the date of this agreement, or (2) any crime of violence.

## B.   MAXIMUM PENALTIES

4.   <u>Maximum Punishment</u>.   Defendant understands that the crime to which Defendant

is pleading guilty carries a maximum sentence of up to 10 years in prison; a maximum fine of

$250,000; and a term of supervised release of not more than 3 years.   A mandatory special assessment of $100 must also be imposed by the sentencing court.

5.   <u>Supervised Release--Explained</u>.   Defendant understands that, during any period of supervised release or probation, Defendant will be under supervision and will be required to comply with certain conditions.   If Defendant were to violate a condition of supervised release, Defendant could be sentenced up to two years in prison, without any credit for time previously served.

6.   <u>Detention</u>.   Provided that Defendant does not violate any conditions of Defendant's pretrial release, and does not appear to be mentally at risk to harm himself or any other person, the Government agrees to recommend that Defendant may remain under the current terms of pretrial release pending imposition of sentence.

## C.   NATURE OF THE OFFENSE -- FACTUAL BASIS

7.   <u>Elements Understood</u>.   Defendant understands that to prove the offense alleged under **Count 1**, the Government would be required to prove beyond a reasonable doubt the following elements:

(a)   One:  Two or more people reached an agreement to commit the crime of theft of a trade secret;

(b)   Two:  The defendant voluntarily and intentionally joined in the agreement, either at the time it was first reached or at some later time while it was still in effect;

(c)   Three:  At the time the defendant joined in the agreement, the defendant knew the purpose of the agreement; and

(d)   Four:  While the agreement was in effect, a person or persons who had joined in the agreement knowingly did one or more acts for the purpose of carrying out or carrying forward the agreement.

2

8.   <u>Theft of Trade Secrets Elements Understood</u>.   Defendant understands that to prove the offense alleged under **Count 1 (Conspiracy to Steal Trade Secrets)**, the Government would also be required to prove beyond a reasonable doubt what the object of the conspiracy was.   For that purpose it is agreed that the following are the elements of the crime of theft of trade secrets. A person commits that offense if:

   (a)   That person did one of the following:

       i.   knowingly steal, or without authorization appropriate, take, carry away, or conceal, or by fraud, artifice, or deception obtain a trade secret;

       ii.   knowingly, without authorization copy, duplicate, sketch, draw, photograph, download, upload, alter, destroy, photocopy, replicate, transmit, deliver, send, mail, communicate, or convey a trade secret; or

       iii.   knowingly receive, buy, or possess a trade secret, knowing it to have been stolen or appropriated, obtained, or converted without authorization.

   (b)   That person did so with intent to convert a trade secret.

   (c)   That person did so with the intent to economically benefit someone other than the owner of the trade secret and intending or knowing that the action would injure the owner of the trade secret.

   (d)   The trade secret was related to a product or service used in or intended for use in interstate or foreign commerce.

9.   <u>Factual Stipulations</u>.   Attached hereto as Attachment "A", and incorporated by reference herein, are factual stipulations entered into between the parties, including the factual stipulations of Defendant's offense conduct relating to the subject offense.   Defendant acknowledges that these statements are true.   Defendant further agrees that these factual statements may be used by any party, including the United States, in any other proceeding, unless the Court should permit the Defendant to withdraw from this Plea Agreement prior to sentencing.

3

10.     <u>Truthfulness of Factual Basis</u>.  Defendant understands that, during the change of plea hearing, the judge and the prosecutor may ask Defendant questions under oath about the offense to which Defendant is pleading guilty, in the presence of Defendant's attorneys. Defendant understands that Defendant must answer these questions truthfully, and that Defendant can be prosecuted for perjury if Defendant gives any false answers.

11.     <u>Venue</u>.  Defendant agrees that venue for this case is proper for the United States District Court for the Southern District of Iowa.

**D.     SENTENCING**

12.     <u>Sentencing Guidelines</u>.  Defendant understands that Defendant's sentence will be determined by the Court after considering the advisory United States Sentencing Guidelines, together with other factors set forth by law.   The Sentencing Guidelines establish a sentencing range based upon factors determined to be present in the case.   Defendant understands that, under some circumstances, the Court may "depart" or "vary" from the Sentencing Guidelines and impose a sentence more severe or less severe than provided by the guidelines, up to the maximum in the statute of conviction.   Defendant has discussed the Sentencing Guidelines with Defendant's attorneys.

13.     <u>Acceptance of Responsibility</u>.  The Government agrees to recommend that Defendant receive credit for acceptance of responsibility under USSG §3E1.1.  The Government reserves the right to oppose a reduction under §3E1.1 if after the plea proceeding Defendant obstructs justice, fails to cooperate fully and truthfully with the United States Probation Office, attempts to withdraw Defendant's plea, or otherwise engages in conduct not consistent with acceptance of responsibility.   If the base offense level is 16 or above, as determined by the Court, the Government agrees that Defendant should receive a 3-level reduction, based on timely

4

notification to the Government of Defendant's intent to plead guilty.

14.    Presentence Report.   Defendant understands that the Court may defer a decision as to whether to accept this Plea Agreement until after a Presentence Report has been prepared by the United States Probation Office, and after Defendant's attorneys and the Government have had an opportunity to review and challenge the Presentence Report.   The parties are free to provide all relevant information to the Probation Office for use in preparing a Presentence Report.

15.    Evidence at Sentencing.   The parties may make whatever comment and evidentiary offer they deem appropriate at the time of sentencing and entry of plea, provided that such offer or comment does not violate any other provision of this Plea Agreement or any provision of any relevant protective order.   Nothing in this Plea Agreement restricts the right of Defendant or any victim to make an allocution statement, to the extent permitted under the Federal Rules of Criminal Procedure, nor does this Plea Agreement convey any rights to appear at proceedings or make statements that do not otherwise exist.

16.    Joint Sentencing Recommendation.   Under Rule 11(c)(1)(C) of the Federal Rules of Criminal Procedure, the parties agree that any sentence of imprisonment imposed upon the defendant will not exceed 5 years.   The parties agree that this sentencing range takes into account all of the relevant factors set forth under 18 U.S.C. § 3553(a), including the advisory sentencing guidelines calculation, the nature and circumstances of the offense, the history and characteristics of the Defendant, and other pertinent factors.   Should the Court decide to impose a sentence of imprisonment exceeding 5 years, Defendant may withdraw Defendant's plea of guilty and the case will then be set for trial.   In the event that the relevant advisory guidelines are amended and made retroactive under 18 U.S.C. § 3582(c)(2), Defendant waives any right to seek a sentencing reduction in exchange for this Rule 11(c)(1)(C) plea agreement.

### E. FORFEITURE, FINES, COSTS, AND RESTITUTION

17. _Forfeiture._ Defendant agrees to forfeiture of the property identified in paragraph 70(1) of the Indictment as being used, or intended to be used in any manner or part, to commit or facilitate the commission of the offense, including:

> Real property located at 26138 South 104th Avenue, Monee, Will County, Illinois. More particularly described as: the Southeast Quarter of the Southeast Quarter of Section 20, Township 34 North, Range 12 East of the Third Principal Meridian, in Will County, Illinois, consisting of 40 acres, more or less, and

> Real property located at the Northwest corner of 298th Place and Amarillo Avenue near Redfield, Iowa, more specifically: Parcel "A" of Northwest Quarter (NW ¼) of the Southeast Quarter (SE ¼) of Section Thirty-one (31), Township Seventy-nine (79) North, Range Twenty-nine (29) West of the 5th P.M., Dallas County, Iowa, as shown on the Plat of Survey recorded in Book 2008 on Page 4696.

Defendant will execute any documents as directed by the Government to complete the forfeiture.

18. _Forfeiture of Real Estate._ Defendant agrees to the immediate forfeiture of all real estate listed in the Indictment, including the properties located at 26138 South 104th Avenue, Monee, Will County, Illinois, and the Northwest corner of 298th Place and Amarillo Avenue near Redfield, Iowa. Defendant further agrees, within 30 days of the filing of this Plea Agreement, to execute any and all paperwork as directed by the Government for the purpose of forfeiting Defendant's interest in these properties.

19. _Waivers Regarding Forfeiture._ Defendant waives all constitutional and statutory challenges in any manner (including direct appeal, habeas corpus, or any other means) to any forfeiture carried out in accordance with this Plea Agreement on any grounds. Defendant further agrees that the forfeiture provisions of this Plea Agreement are intended to, and will, survive Defendant notwithstanding the abatement of any underlying criminal conviction after execution of this Plea Agreement. The forfeitability of any particular property pursuant to this agreement shall

be determined as if Defendant had survived and that determination shall be binding upon
Defendant's heirs, successors and assigns until the agreed forfeiture, including any agreed money
judgment amount, is collected in full.

20.     Consent to Judgment of Forfeiture.   Defendant agrees to waive all interest in assets
subject to this Plea Agreement in any administrative or judicial forfeiture proceeding, whether
criminal or civil, state or federal.   Defendant agrees to consent to the entry of orders of forfeiture
for such property and waives the requirements of Federal Rules of Criminal Procedure 32.2 and
43(a) regarding notice of the forfeiture in the charging instrument, announcement of the forfeiture
at sentencing, and incorporation of the forfeiture in the judgment.   Defendant understands that the
forfeiture of assets is part of the sentence that may be imposed in this case.

21.     Fines and Costs.   Issues relating to fines and/or costs of incarceration are not dealt
with in this agreement, and the parties are free to espouse their respective positions at sentencing.

22.     Special Assessment.   Defendant agrees to pay the mandatory special assessment
of $100 at or before the time of sentencing, as required by 18 U.S.C. § 3013.

23.     Restitution.   Defendant agrees that, to the extent the government proves an
entitlement to restitution under the governing law, the Court should impose an order of restitution
for all relevant conduct in an amount to be determined by the Court; that such order of restitution
shall be due and payable immediately; and that if Defendant is not able to make full payment
immediately, Defendant shall cooperate with the United States Probation Office in establishing an
appropriate payment plan, which shall be subject to the approval of the Court, and thereafter in
making the required payments.   Any such payment plan does not preclude the Government from
utilizing any collections procedures pursuant to the Federal Debt Collections Act and including the
Treasury offset program.

7

24.   <u>Financial Statement</u>.   Defendant agrees to complete truthfully and in full a financial statement provided by the U.S. Attorney's Office, and return the financial statement to the U.S. Attorney's Office within 30 days of the filing of this Plea Agreement.

## F.   LIMITED SCOPE OF AGREEMENT

25.   <u>Limited Scope of Agreement</u>.   This Plea Agreement does not limit, in any way, the right or ability of the Government to investigate or prosecute Defendant for crimes occurring outside the scope of this Plea Agreement.   Additionally, this Plea Agreement does not preclude the Government from pursuing any civil or administrative matters against Defendant, including, but not limited to, civil tax matters and civil forfeiture which arise from, or are related to, the facts upon which this investigation is based.

26.   <u>Agreement Limited to Southern District of Iowa</u>.   This Plea Agreement is limited to the United States Attorney's Office for the Southern District of Iowa, and cannot bind any other federal, state or local prosecuting, administrative, or regulatory authorities.

27.   <u>Immigration Consequences of Defendant's Guilty Plea</u>.   Defendant has discussed with Defendant's counsel the impact of Defendant's guilty plea on Defendant's immigration status.   Defendant specifically understands that Defendant's guilty plea may restrict Defendant's ability to challenge Defendant's removal from the United States in the future, and that Defendant may be subject to immediate removal from the United States following the service of Defendant's sentence.

## G.   WAIVER OF TRIAL, APPEAL AND POST-CONVICTION RIGHTS

28.   <u>Trial Rights Explained</u>.   Defendant understands that this guilty plea waives the right to:

8

(a)     Continue to plead not guilty and require the Government to prove the elements of the crime beyond a reasonable doubt;

(b)     A speedy and public trial by jury, which must unanimously find Defendant guilty before there can be a conviction;

(c)     The assistance of an attorney at all stages of trial and related proceedings, to be paid at Government expense if Defendant cannot afford to hire an attorney;

(d)     Confront and cross-examine adverse witnesses;

(e)     Present evidence and to have witnesses testify on behalf of Defendant, including having the court issue subpoenas to compel witnesses to testify on Defendant's behalf;

(f)     Not testify or have any adverse inferences drawn from the failure to testify (although Defendant also has the right to testify, if Defendant so chooses); and

(g)     If Defendant is convicted, the right to appeal, with the assistance of an attorney, to be paid at Government expense if Defendant cannot afford to hire an attorney.

29.     <u>Waiver of Appeal and Post-Conviction Review</u>.   Defendant knowingly and expressly waives any and all rights to appeal Defendant's conviction in this case, including a waiver of all motions, defenses and objections which Defendant could assert to the charge or to the court's entry of judgment against Defendant.   If the court imposes the sentence recommended by the parties, Defendant also waives any and all rights to appeal Defendant's sentence.   Also, Defendant knowingly and expressly waives any and all rights to contest Defendant's conviction in any post-conviction proceedings, including any proceedings under 28 U.S.C. § 2255.   These waivers are full and complete, except that they do not extend to the right to appeal or seek post-conviction relief based on grounds of ineffective assistance of counsel or prosecutorial misconduct not known to Defendant, or reasonably knowable, at the time of entering this Plea Agreement.

## H.   VOLUNTARINESS OF PLEA AND OPPORTUNITY TO CONSULT WITH COUNSEL

30.   <u>Voluntariness of Plea</u>.   Defendant represents that Defendant's decision to plead guilty is Defendant's own, voluntary decision, and that the following is true:

(a)   Defendant has had a full opportunity to discuss all the facts and circumstances of this case with Defendant's attorneys, and Defendant has a clear understanding of the charges and the consequences of this plea, including the maximum penalties provided by law.

(b)   No one has made any promises or offered any rewards in return for this guilty plea, other than those contained in this written agreement.

(c)   No one has threatened Defendant or Defendant's family to induce this guilty plea.

(d)   Defendant is pleading guilty because in truth and in fact Defendant is guilty and for no other reason.

31.   <u>Consultation with Attorney</u>.   Defendant has discussed this case and this plea with Defendant's attorneys and states that the following is true:

(a)   Defendant states that Defendant is satisfied with the representation provided by Defendant's attorneys.

(b)   Defendant has no complaint about the time or attention Defendant's attorneys have devoted to this case nor the advice the attorneys have given.

(c)   Although Defendant's attorneys have given Defendant advice on this guilty plea, the decision to plead guilty is Defendant's own decision. Defendant's decision to enter this plea was made after full and careful thought, with the advice of Defendant's attorneys, and with a full understanding of Defendant's rights, the facts and circumstances of the case, and the consequences of the plea.

## I.   GENERAL PROVISIONS

32.   <u>Entire Agreement</u>.   This Plea Agreement, and any attachments, is the entire agreement between the parties.   Any modifications to this Plea Agreement must be <u>in writing</u> and signed by all parties.

10

33.     Public Interest.  The parties state this Plea Agreement is in the public interest and it takes into account the benefit to the public of a prompt and certain disposition of the case and furnishes adequate protection to the public interest and is in keeping with the gravity of the offense and promotes respect for the law.

34.     Execution/Effective Date.  This Plea Agreement does not become valid and binding until executed by each of the individuals (or their designated representatives) shown below.

## J.     SIGNATURES

35.     Defendant.  I have read all of this Plea Agreement and have discussed it with my attorneys.  I fully understand the Plea Agreement and accept and agree to it without reservation. I do this voluntarily and of my own free will.  No promises have been made to me other than the promises in this Plea Agreement.  I have not been threatened in any way to get me to enter into this Plea Agreement.  I am satisfied with the services of my attorneys with regard to this Plea Agreement and other matters associated with this case.  I am entering into this Plea Agreement and will enter my plea of guilty under this Agreement because I committed the crime to which I am pleading guilty.  I know that I may ask my attorneys and the judge any questions about this Plea Agreement, and about the rights that I am giving up, before entering into the plea of guilty.

1/27/2016

Date

MO HAILONG
Defendant

11

36.     Defendant's Attorneys.   I have read this Plea Agreement and have discussed it in

its entirety with my client.   There is no Plea Agreement other than the agreement set forth in this

writing.   My client fully understands this Plea Agreement.   I am satisfied my client is capable of

entering into this Plea Agreement, and does so voluntarily of Defendant's own free will, with full

knowledge of Defendant's legal rights, and without any coercion or compulsion.   I have had full

access to the Government's discovery materials, and I believe there is a factual basis for the plea.

I concur with my client entering into this Plea Agreement and in entering a plea of guilty pursuant

to the Plea Agreement.

1/27/16

Date

Mark E. Weinhardt
Holly M. Logan
Attorneys for Mo Hailong
2600 Grand Avenue, Suite 450
Des Moines, Iowa 50312
Telephone:   (515)-564-5270
E-Mail: mweinhardt@weinhardtlogan.com

Mark E. Beck (Admitted pro hac vice)
Attorney for Mo Hailong
350 West Colorado Boulevard, Suite 200
Pasadena, CA 91105
Telephone:   (213) 596-7828
Telefax: (213) 596-9530
E-Mail:   mbeck@markbecklaw.com

37.    United States.  The Government agrees to the terms of this Plea Agreement.

Kevin E. VanderSchel
Acting United States Attorney

1/27/2016

Date

By:

Jason T. Griess
Marc Krickbaum
Assistant U.S. Attorneys
U.S. Courthouse Annex, Suite 286
110 East Court Avenue
Des Moines, Iowa   50309
Telephone:   515-473-9300
Telefax:   515-473-9292
E-mail: Jason.Griess2@usdoj.gov

Matt Walczewski
Trial Attorney
U.S. Department of Justice

13

ATTACHMENT A

STIPULATION OF FACTS

1.       Pioneer Hi-Bred International, Inc. ("Pioneer") is a seed manufacturer located in Johnston, Iowa.   Pioneer is a wholly owned subsidiary of Dupont, a corporation headquartered in Wilmington, Delaware.   Pioneer sells seed under its company name.   Pioneer utilizes research and production fields in numerous locations including, but not limited to, Iowa and Illinois.

2.       Monsanto Company ("Monsanto") is a diversified agricultural bio-technology company that sells seed using a variety of brand names, including Dekalb for its corn seed. Monsanto is headquartered in St. Louis, Missouri.   Monsanto utilizes production fields and facilities in numerous locations including, but not limited to, Iowa and Illinois.

3.       Seed companies such as Pioneer and Monsanto develop inbred lines of corn seed that they cross to produce hybrid corn seed for commercial sale.   Pioneer and Monsanto have each developed proprietary lines of inbred corn seed exhibiting various valuable traits, such as disease resistance, pest resistance, and drought resistance.   At certain times, certain of these proprietary inbred lines of corn seed were trade secrets of Pioneer or Monsanto, in that the inbred lines (a) contained scientific and technical information that the owner had taken reasonable measures to keep secret, and (b) that information derived independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable through proper means by, the public.

4.       In each growing season, Pioneer and Monsanto grew pairs of male and female proprietary lines of inbred corn seed together in fields in, among other places, Iowa and Illinois, in order to cross those inbreds with each other and produce hybrid seed corn.   The fields in which Pioneer and Monsanto did this are referred to as "production fields."

14

5.     At times pertinent to this case, some of the inbred lines of corn seed planted in the production fields were trade secrets of Pioneer or Monsanto.

6.     Commencing in approximately 2006, the Defendant, Mo Hailing ("Mr. Mo") was an employee of Dabeinong Technology Group, Company ("DBN"). DBN is based in China. One of Mr. Mo's job duties as an employee of DBN was to obtain commercially available and other hybrid and inbred corn seed lines for possible use by DBN for breeding, planting, and/or producing corn seed in China.

7.     From in or after 2007 to 2012, two or more individuals knowingly combined, conspired, and agreed to do one or more of the following:

a.     knowingly and without authorization appropriate, take, carry away, or conceal trade secrets belonging to Pioneer and/or Monsanto, in violation of 18 U.S.C. § 1832(a)(1);

b.     knowingly and without authorization transmit, deliver, send, or mail trade secrets belonging to Pioneer and/or Monsanto, in violation of 18 U.S.C. § 1832(a)(2); or

c.     knowingly receive or possess trade secrets belonging to Pioneer and/or Monsanto, knowing the same had been appropriated, obtained, or converted without authorization, in violation of 18 U.S.C. 1832(a)(3).

In reaching this agreement, the following is also true:   First, these individuals intended to convert one or more trade secrets.   Second, the trade secrets were related to a product or service used in or intended for use in interstate or foreign commerce.   Third, the individuals intended to economically benefit someone other than the owners of the trade secrets.   Fourth, the individuals intended or knew that their actions would injure the owners of the trade secrets.

8.     At some point when this conspiracy was in effect, Mr. Mo voluntarily and intentionally joined that agreement.

15

9.    At the time Mr. Mo joined in the agreement, he knew of the existence and the purpose of the agreement.   In particular, Mr. Mo knew that there were inbred corn seed lines of seed companies such as Pioneer and Monsanto that were proprietary and confidential to those companies.   He further knew that the purpose of the agreement was to obtain samples of various types of corn seeds, including but not limited to such confidential and proprietary inbred lines, and transport them to China.

10.    While the agreement was in effect, a person or persons who had joined in the agreement knowingly did one or more acts for the purpose of carrying out or carrying forward the agreement.   For example, during the harvest season in 2011, members of the conspiracy, including Mr. Mo, took, or assisted in the taking of, whole ears of corn and inbred corn seeds belonging to Pioneer and Monsanto from fields, including fields in the Southern District of Iowa, and transported, or attempted to transport, those inbred seeds to China.

11.    Defendant agrees to forfeiture of the property identified in paragraph 70(1) of Indictment, as being used, or intended to be used in any manner or part, to commit or facilitate the commission of the offense, including:

Real property located at 26138 South 104th Avenue, Monee, Will County, Illinois.   More particularly described as: the Southeast Quarter of the Southeast Quarter of Section 20, Township 34 North, Range 12 East of the Third Principal Meridian, in Will County, Illinois, consisting of 40 acres, more or less, and

Real property located at the Northwest corner of 298th Place and Amarillo Avenue near Redfield, Iowa, more specifically: Parcel "A" of Northwest Quarter (NW ¼) of the Southeast Quarter (SE ¼) of Section Thirty-one (31), Township Seventy-nine (79) North, Range Twenty-nine (29) West of the 5th P.M., Dallas County, Iowa, as shown on the Plat of Survey recorded in Book 2008 on Page 4696.

16

Defendant stipulates that said property was used, and intended to be used, to commit and facilitate the commission of conspiracy to steal trade secrets, as alleged in Count 1 of the Fourth Superseding Indictment, to which Defendant is pleading guilty.

1/27/2016
Date

MO HAILONG
Defendant

1/27/16
Date

Mark E. Weinhardt
Holly M. Logan
Mark E. Beck (Admitted pro hac vice)
Attorneys for Defendant, Mo Hailong

Kevin E. VanderSchel
Acting United States Attorney

1/27/2016
Date

By:

Jason T. Griess
Marc Krickbaum
Assistant U.S. Attorneys

Matt Walczewski
Trial Attorney
U.S. Department of Justice

17